3090138 Steve Talianai, appellate cross appellant by Robert Kaplan v. Patrick Herrmann, state's attorney, appellant cross appellate Patrick Herrmann. Mr. Herrmann, you may proceed. Mr. Justices, before we get too far and I think I've got a poll for a client, I want to point out that the lawsuit was originally filed against a county clerk, and as state's attorney I represent her. The pleadings were changed in my agreement. I stayed on the case and I was handling it from the beginning. The, I should say the appellant in this case, or the appellant in this case is really the county bureau who will be paying the money. It doesn't obviously come from the state's attorney. The county bureau is the one who's going to have to pay this. And they are my client in whether they decide to pay this or not. We believe that the purposes of the Freedom of Information Act were not served in this case by the wording of the attorney's fees, and we ask the court to reverse the trial judge based on that. As courts are aware, the purpose of the Freedom of Information Act is to give information to somebody who requested, so issues can be freely discussed. Persons can be fully informed on political decisions and monitor the government to make sure they're making the correct decisions acting in the public interest. Is this the only way in which this information can be obtained is through a FOIA request? No, I don't believe so. What other avenues are available? Mr. Taliani had a post-conviction matter pending. I don't think it was a PC case, but I believe it was a 214-01 that's still pending. I believe he could have filed a motion in that seeking the grand jury transcript. I think he could have filed it even without that pending in the criminal case, saw the court order to do it. Under another act? Is there anything else that provides for the production of this transcript other than through a FOIA request? Let me go back, I guess, all the way to the beginning. The Illinois Supreme Court rules require a grand jury transcript be given to the defendant in this criminal case. And it was in this case. And it was in this case. The Supreme Court rule, and I don't know which rule it is, requires the testimony and witnesses either before the grand jury or before a preliminary hearing be provided to the defendant as part of the statutory discovery. And that was done in this case. As I understand it, Mr. Taliani's trial attorney lost that transcript somewhere along the line. And he could not obtain it from him. And he sought the freedom of information case. It's been our position all along that we cannot give a grand jury transcript to Mr. Taliani or anybody else unless there's a court order directing the state's attorney to do so. I realize it's Mr. Taliani's actual grand jury transcript, but I don't know that he's any different in the freedom of information request than a member of the press. Well, as a matter of fact, by the language of the Freedom of Information Act, grand jury transcripts would be excluded from there because anything exempts anything prohibited from disclosure by law. I agree with that. And the Grand Jury Act prohibits the disclosure of grand jury proceedings. It prohibits it without a disclosure, without a court order, making a finding that's in the interest of justice to do so. Was this objected to in any way, manner, in the court? Yes. It was rejected. How was it objected to? Objected to? Did I object to giving over the transcript? Or did I cite the statute that says it can only be given with a court order? That's correct. I did, in both the answer to the request before we got to court, the grand jury statute cited that it can only be given upon court order. In the answer to the complaint, it was answered that it can only be turned over with a court order pursuant to the grand jury statute, 725 ILCS 5-112-6. And that was our answer all along. The answer to the complaint that was filed? Yes. So in other words, if I understand the facts, we went to a county clerk who said, I don't have anything to do with this. Go see the state's attorney. The state's attorney says, I can't do anything because it has to be pursuant to court order. Is that correct? A little bit different, but only, I mean, the county clerk did say it didn't happen. Right.  It was appealed to the state's attorney. I'm not exactly sure why that was, but my answer to the appeal was it can only be disclosed pursuant to a court order because of the grand jury statute. Correct. Okay, so you were basically acting as an attorney and giving advice? Yes. Okay, and then? I cited the exception, and what I thought was the exception was why it was controlled under the FOIA statute. That's specifically controlled by other laws. Okay, so under the Grand Jury Act, can you proceed independently under the Grand Jury Act absent FOIA? Yes. I believe the Grand Jury Act is more specific, and that's the statute that should control in this case. But does it provide, back to my question a long time ago, does it provide an avenue to acquire the grand jury? Yes. It does? It does. So what are we talking about FOIA here for? I don't know. That's the way the action was brought. And then in the FOIA request, did you formally object in a court of law in any manner? I told the judge in my answer that it can only be given with a court order. I told the judge in Judge Doherty, I said- Did you argue against the grant by this judge? No, I said the court grants the order. I will certainly turn it over to him. And to an ordinary layman, a complaint is just simply a request under FOIA, right? I don't know if I can answer that. Okay. I'm not a layman, I guess. Your objection then is now, as I understand it, is that you couldn't just hand it over. That's correct. That you could only hand it over after you received an order on this. Yes. I feel I was- FOIA's order was sufficient for you to do it. Correct. I felt I was obligated by the grand jury statute not to turn it over absent a court order. Unless this court or Judge Doherty ordered it. Judge Doherty, yeah. Which he did. If he grants the court order, I will certainly hand it over. In which you did. And I did. He entered the order and it was turned over. I don't think this case is anything at all like Calinan. In Calinan, he was seeking the very records that the Prisoner Review Board was going to be determining his parole status on, granting his parole. I can tell you this, that Calinan is a prisoner out of Bureau County. I can tell you that every year he comes up, I write a letter to the Prisoner Review Board objecting to his release. Should Calinan be able to get that? Oh, I think absolutely so. He should know what the Bureau County State's Attorney is saying about him. And whatever other letters were in there, I think Calinan's got a right to see that information so he knows how to respond to it before the Prisoner Review Board. That was something that was going on right then and there. That is something that he needed to determine whether that Prisoner Review Board was going to be acting in the best interest, the best public interest. Calinan, in contrast, talked about a 14-year-old grand jury transcript that no one has been able to put any relevance on or put any importance to of what it would be possibly useful. His case was tried, he was convicted. His case got held on appeal. His post-conviction matter did not mention the grand jury or anything regarding the grand jury or improperly indicted or anything like that. Well, where's that argument going to right now that you're talking about? I mean, is he or is he not entitled to a grand jury transcript if it proceeds properly under the Act? I think he is. And so you did not give this argument in a trial court, did you? I didn't. That what? That Calinan is not applicable to this case. They're entirely different situations. Calinan needed that information for the then and now. Is your argument essentially that since you had no choice but to wait for a court order or to get a court order for them to obtain a court order, that the county shouldn't have to pay these fees? That's correct. I could have required Mr. Taliani to prove that it was in the best interest of justice that the court should grant an order directing me to give him the transcript. I did not do that. I basically told the court, if you issue the order, I will turn over the transcript. It was his transcript, and I didn't see the point of prolonging that, I guess, and having a hearing whether it was in the best interest of justice. So in that sense, I guess I do agree that if he wants it, he can have it. It's just a matter of paying the attorney's fees and the amount of attorney's fees that the avenue took to get that transcript. Could you have acted proactively to stipulate it to an order? I essentially did. Or to present the court an order saying I need this protection of a court order? I believe I did in my answer. I believe I did in my answer to the complaint that it can only be given upon a court order. I believe I did in my response letter to Taliani that it can only be given with a court order, and whether he would have filed a motion in the criminal case, that would have certainly solved the problem. If that would have happened, we wouldn't be here today dealing with $9,000 in attorney's fees, and I don't think the County Bureau should have to pay $9,000 or any amount of money because their state's attorney followed the law and didn't just give out a grand jury transcript, which I think is prohibited from state's attorney doing. In whose possession is the grand jury transcript? The grand jury transcript is, well, there's two places. It's kept in the state's attorney's file, and it's also kept on defense headcount. I don't know if a court reporter keeps a copy. In Bureau County, there is not a copy that's given to the court. The clerk does not have a copy of that. I think there's a couple of counties that did do it that way, but I think the courts have ruled that it should not be going to the clerk of the court at this point. So the only place that Taliani could have gotten it at this point, I guess, is from the state's attorney's office because his attorney did not have a copy. Whether there was any made at that time 14 years ago, I don't know. Well, it's interesting. What would be archived at the state's attorney's office and not the clerk of the court? Most other documents are, aren't they? They are, and I don't know why that is. The state's attorney pays for the grand jury court report, pays to have those transcribed and paid for that, and I suppose that's why we get them rather than them going into the court file. I think, historically, it's just the way it's always been done. One of the main points I believe is the, I don't believe the defendant has, I'm sorry, Mr. Kaplan has met his word of proof of proving the reasonableness of his attorney's fees. I think the amount of evidence he put on, I think, is insufficient, both with regard to the hourly rate and with regard to the hours. Mr. Kaplan, the court found that many of the items were not reasonable. The trial court reduced 10 of the 27 entries, reduced the number of hours by 25%. Mr. Kaplan's math was in error. Mr. Kaplan sought fees for working on both of his freedom of information cases that he had pending at that time, even though he only prevailed in one. He was seeking attorney's fees for the alternative method he was seeking to get the grand jury transcript. He was checking with, his billing suggests he was checking with the court reporters in the chief judge's office to see if they had a copy of the grand jury transcript. He says that he was, he admits that he was seeking fees for both cases, but he would have been, if he would have prevailed on the other case, he would not seek the attorney's fees for that case. I've never heard of somebody asking for attorney's fees they have not yet prevailed upon, and that I don't think is right. I think taking all those matters into consideration, I don't think he's presented reasonable evidence of what his attorney's fees are. I think his billing is in summary. It says what he was doing on those days, but didn't break it down in the amount of times he had spent. With regard to the hourly rate, I don't think he's met his burden of proof there. He's produced evidence from one attorney who hasn't done any Freedom of Information cases. That's $250 an hour. That's what he was getting paid as an expert witness in the case. Mr. Kaplan himself testified that he felt it was worth $250 an hour, although he hasn't said one last time he tried a case in the 13th Judicial Circuit. He did not, and he said he did not do an FOI case before this one. He did say that he worked for the Department of Employment and Security at a contractual rate of $30 an hour plus benefits. I think he left. And then his bare assertion in the record that he feels that his services and the amount of work he performed in the case was necessary. I think it's self-serving. It's not based on anything in the record. It's one bare statement as to a summary of what he had done. What is our standard of review on those issues? I think the standard of review on the court's discretion would be an abuse of discretion. On the court, his view of the reasonableness of it, I think, is abuse of discretion. Whether the defendant met his burden of proof, I think, should be denoted. I don't think Judge Doherty should have been in the position where he had to pretty much put everything aside and decide a case based on his knowledge of cases in the 13th Judicial Circuit. Counsel has two minutes. Thank you. I think that puts the trial court in an unfair position to have to essentially determine what reasonable attorney's fees are from very little substantive evidence in the record. I think if you look at the factors in J.B. Esker's and Son v. Clay Paugh, those factors, I think, all weigh in favor of the defendant, the county in this case. The complexity of the case, the nature of the case, the benefit to the client, all of those things. I think there's very little speculation how this would have benefited Mr. Taliani. I think there's nothing complex about this case. We're talking about the grand jury statute, the freedom of information statute, and a few cases. This case only gets complicated into a lot of cases when we start discussing the attorneys' position. The underlying case of whether the grand jury transcript should be turned over should not have amounted to $9,000 in attorney's fees. Under the circumstances, because Mr. Catherin points out that we acted in good faith, I agree with that, and I don't think the attorney's fees should have been awarded in that case. I think the judge has the discretion to do that. The statute says may. I disagree that Callahan makes this automatic. That was not the issue in Callahan as I understand it, although you understand it better than I do. Callahan, the issue was whether they should have been awarded at all. I think the Prison Review Board was using the wrong defense, if you will, whether this was for private use or not. Based on that, this court held that they should have been awarded in that case. There was no issue raised from reading the case as to the reasonableness of it or whether they should have been awarded in the first place. And I think that goes back to what I was saying before about Callahan being a current case in his parole there, being current, as opposed to this being 14 years old. I think the question the county board asked me is, what will you do in the next case? I didn't have an answer for it. I don't know if the answer is to destroy grand jury transcripts and say we don't have them or to keep them in the file for the historical purposes of this. But, again, I still feel that court order is necessary before the grand jury transcript can be turned over to Mr. Cavaney or anybody else. And I ask the court to reverse the order in terms of these mistakes. Thank you. I don't believe there are any further questions. Thank you. Mr. Cavaney, you may respond. Thank you, Mr. Court. If I may at first just take a moment, a personal moment, and apologize to Judge Schmidt for how I conducted myself with the companion case. There were two cases that went parallel for a while, and he was one that justices on the other case. And I understand the decision that was made in the last orders. I don't quarrel with him. I apologize for anything I've done to have caused it. There were other circumstances. I'm not at the place to go into it right now, but it was not as described in the order. Give me one more time. That's the best I can do. Okay. Now, to this case. First of all, I wasn't sure. I was wearing the earphones because I do. I find that my hearing is going a little bit. I can be fine over here. But if Mr. Herman was saying that I had lost the original transcript, it was his fire attorney who had done so, that he went on a, you know, foray all over the place to see if he could find something that you had. I got to the case. The first thing I did was to try to cut it down to who has it, who's a proper defendant. And in both cases I started, you know, pairing out who didn't belong and revised the complaint to make it efficient to the basic facts of the case. So, and somehow as I hear the arguments and the questioning of the court, somehow I think we're off the issue of the nature of how do we, how do you ask for a grand jury transcript. The question for this court, that's already been resolved by Judge Doherty's ruling that it had to be turned over by FOIA. Mr. Herman had already raised in a motion to dismiss, affirmatively stopped, tried to stop the production. He cited the grand jury exception. He did not cite the exceptions to the exception. And we contended at that time that he didn't have, he had to please approve the exemption he was claiming. Otherwise, all records are subject to FOIA. Without exception. Unless there's a statute somewhere else that has to be raised in the matter. Well, Judge Doherty heard all that and then it got to the point where I think Father came down to, after going through all that, Mr. Herman, I think he said, well, if there's an order, we can do it. And I said, well, give it to him. You know, just cuts in the chase again. Just saying you knock out people who don't belong. Cuts in the chase. I don't want to litigate something. I want a transcript. And we filed under FOIA. I didn't file under FOIA. Mr. Taliani did, and I came in later and took up the case from there. And if I had not, and if the case had not been filed, I don't think that Mr. Taliani would yet have his transcript. And so it's like a cause and effect. Let me ask you something. Let me interrupt you for a second. Could he have just filed a petition under the Grand Jury Act and petitioned the court and said, look, under the Grand Jury Act, I can't get these without an order, a court order. I need an order. I'm sure my prior lawyer lost the thing and filed a petition under the Grand Jury Act. I don't read the Grand Jury Act to provide for that private right of action in the first place. Second of all, he already had an order. He gave it over the criminal case. And the Grand Jury says, and the interests of justice aren't because of some other law or other order. They already had the order to turn it over. And during the cross-examination meeting, during the de-petition hearing, I was asked, do you think it's fair that the county would have to do this if we have to violate the law? And I gave him a long answer that is also in the record saying, you don't have to violate the law. You already have the order. It doesn't say how many times you have to do it. There's no limitation on it. There's already an order saying to turn it over. So for us to ask under FOIA to say we'd be violating the law, no, FOIA wouldn't be an exception. It's already there that they never applied it. And I pointed that out to Judge Doherty, too, that may have helped sway it a little bit. I don't know exactly how he was thinking of that. But it came up that under Lever and under the other cases, you have to plead and prove your exemption. If you're going to go out and do another law, you have to plead and prove that applies. So what you're saying is, is that the Bureau of County had to plead the Grand Jury Act? They had to prove the full Grand Jury Act and show how the exemption applied, not just the first part, but drop down to Section C, where the exemption is that Mr. Herman is relying upon when he thought he could finally turn it over. That wasn't brought up in the first instance. It hadn't been brought up. And it might have been easier in that time to say, look, I can't do what you mentioned, that why doesn't he just affirmably say, Judge, we're here and we have it. I can't give it over unless there's an order. The court feels it would be in the interest of justice to do so. I've already given over anyway. Give me the order. But when Mr. Taliani filed it himself, there was a motion to dismiss. I came in. There's a second motion to dismiss. And there's an impression here that he voluntarily wanted to give it up at all times. Who cares? Well, that's not how it worked. Taliani asked for it. Motion dismissed. I asked for it. Motion dismissed. Motion dismissed. Denied. And it wasn't going to go through all of this. And I had to go in there and write. I did not know FOIA beforehand. And one of the things I can do is I can pick up a case I know nothing about and then take it from a static position and then appeal it or go forward on the matter of law. I don't like doing divorce. I'm no good at divorce. I wouldn't hire me as a divorce attorney. I wouldn't recommend anybody do it. But if you have a single issue after a divorce case, I can look up the law and I can use my skills as well as anybody else to find out what the law of the matter is. Plus, I also did some research, and I could not find any other attorneys through the Internet or Google who actually hold themselves out to be FOIA attorneys. The attorneys I know that do it on a regular basis also do other things. I found out that the gentleman in Clarkson, he does a lot of DUI. And once he had to use a FOIA, he did FOIA because he had to do it for that case. But he didn't specialize in it. And that was the purpose here, that I necessarily have to come into something that most people, most attorneys don't know that much about. And I was selected, and there was a testimony as to why I was selected through Richard Killeen. He knew Taliani. He recommended him. I'd done business with Richard Killeen for years. He knew how I handled myself. It was better earlier than later, apparently. But he knew how I handled myself, and he recommended me because I could take something that nobody is used to doing and do something with it. But Judge Daugherty said that he slashed me in half as far as fees go, cut it down. He went line by line, and the case law we cited here talks about going line by line. And he used his own experience, which is there. He used the standards I didn't agree with, such as the capital compensation law. And I'm not an appointed attorney. That should never have been done. But I am not in a position now to say it should have been more than $162 an hour because I didn't really appeal that. And by the same token, the decision was made that transaction belongs under FOIA. That's the end of the story because there's nobody to appeal that. The only issue before this court now is, were the fees reasonable for what I did, and was it within the discretion of Judge Daugherty to make that award? Did he think it through? I think it's obvious he thought it through as to me overcharging the other case. I gave credits for that. Now, there's certain research that would necessarily apply to both cases. If I had to look at Lieber, the Southern Illinoisan, all those cases I had to look at, it doesn't matter which case I'm looking at, I have to look at those cases. But then I can start splitting out things where they necessarily are separate. And then Judge Daugherty heard that explanation, and he made a decision within his discretion. So I think the fees are reasonable. There's nothing in here so far that's shown me, not that I necessarily want to recognize it, but there's nothing that's shown me that the judge abused his discretion. All the factors were considered. And the issue of this site, on the last brief I compiled on page 5, I talked about Calum and citing Duncan Pub. Duncan Pub is an interesting case because it didn't go to judgment. There was a FOIA request, and then somebody's judgment apparently was on the books, so it was ready to go, but they turned over the documents before judgment was entered. Yet, there was attorney's fees allowed for that. So that shows me, anyway, that shows me that if an attorney does something, and there's a direct causal relationship between what he does and the end result substantially prevailing, in this case, 100% prevailing, you've got the whole transcript, or we've got 100% prevailing on it, there was an attorney there, did he get the result? Did he get it all? He did substantially. Then you have to pay attorney's fees. Duncan also, he said to use the word may, but the way that Duncan and Calum have come around to it is basically you've got to do it. And the reason you have to do it is because of indigent prisoners. But I think I've also raised a point, too, that let's say Matteliani was not indigent, paid me that amount of money, $9,000, let's say, to go ahead and he paid me because the judge thought it was reasonable. Now, I want to go, but if I were to have him come, if he gave me that on the front as a retainer, would he not have a right to have me go back to court and get that back for him? And why would I do that for free? There's an integral part of the cause of actions allowed under FOIA. One is to get the documents. The other one is to get attorney's fees if there's been a violation of FOIA. And all you have to show, in this case, the judge ruled that was the case, ordered it over there to be paid. Let me ask you this. What exactly was the violation of FOIA that you just referred to? Because... Oh, it's... Let's use a vulnerable word. You see, 611, they used the word that the... such as the documents were properly withheld or not improperly withheld and that kind of thing. To show a cause of action for FOIA, these are public records. We made a request. Here's what they said. And they refused to request. That's all. Weren't they required by law to refuse their request? No. I don't know. We'll put it this way. I don't know because when I filed a complaint or anybody files a complaint and just says, I asked for the records and we know the records are presumed to be producible unless there is an exemption which has to be raised by the public body. So at the beginning of the case, I asked for the records. They weren't given and we want you to turn them over under the declaratory judgment to turn it over. That's it. Problem finished the case. Next step is defend something. Why it didn't, okay, is we can't produce something. And then leave it at all to say, why? Give us a... It has to be subject to adversarial testing which in my mind is file an answer and say why not an affirmative defense. Here's a statute. Okay? And that's a question of law and there's really not many more facts you have to rely upon at that point of time. But then the case in the posture that we want, we can't give it to you for these reasons. Now we have to test those reasons. And this is not like, you know, the card cases, voter registration cards which involve privacy. This is Taliani's transcript. And we don't get into personal invasion of privacy or any of that issue. This is a document. It's a public record. It's not listed as one of the exemptions in FOIA. You can reach out to another law court but you must plead and prove your exemption. And your exemption is we can't give it to you unless... There's a court order. Unless there's a court order. Okay? But in this case, there already was a court order. That's not Taliani that got the first transcript. He can't stand here and say, I can't violate... And give it to him now because there's no order. Well, that means maybe there was no order earlier. So whether he violated the statute earlier when there was no order. Once there's an order, there's an order. He can do it. There's no problem with that. And in the record, I even laid out possible ways he could have done this by saying, ordinarily we would not do this. But in your specific circumstances, these are factors that allow me to do it. And that's in the record because it's in one of the things I put in. I also gave testimony to that effect, too. I can't give you the page number right now of anything, but I can tell you those things happen. Now, the other issue before I run out of time is... It's two minutes. Okay. Is to find out... I say Judge Dorsey was in error when he summarily threw out my supplemental petition for attorney's fees for trying the issues of attorney's fees. Again, had I been paid in advance, then, and they didn't want to pay and I had to go try the case, well then, I would not be paid for giving my client $9,000 to which he would be entitled to. Because he's entitled to reimbursement from me. It ends up with me, but that is his right. And so, if you take a person who is not an innocent prisoner and from that point of view, I don't think you want to make a law that the attorney cannot get paid for good and reasonable and necessary legal services to enforce a cause of action that actually exists in favor of his client. If you look at the Burlak case which I originally misinterpreted, that one said that you're entitled to attorney's fees for every part of the case. They may have lost, in my opinion, they knocked off the complaint, the pleadings, the post-trial, the pre-trial pleadings, the actual trial, the post-trial appeal, all of that, they turned it into entitled to attorney's fees. Well, Section 11 gives a specific cause of defamation for attorney's fees. There's no reason why you can have attorney's fees allowable for the entitlement to the record part. And another clause of equal dignity. There's no logic to that. And again, if you look at the example I made earlier, I made it in my papers, when I did the calculations, if you take the total hours, that which Judge Doherty found reasonable, and that which he wouldn't even consider, it comes up to what, about 90 hours, I believe it is, 77 hours of actual time. But he only allowed me about 58 hours of actual time. So you take the dollar amount he gave me, which is 9,000 and change, you divide it by the 77, you get like $120 an hour. Now I think I'm worth $250 an hour. I've had over 60 jury complaints and trials, more than that. I've had so many, many appeals. I still do other appeals and referrals to other attorneys. I've been in the Illinois Department for employment security. I've reviewed cases for them. I don't make the final decision, but 90% or better of what I submit to the Board of Review gets approved. And that's actually reviewing cases, and as you would here, I would do the same thing to the referees in the more administrative levels. So, plus I got about 40 years or better doing this, not including the law clerking I did. So I think, yeah, if anybody's entitled to $250 an hour, I think I have the merits to do that. Now, I said $250. Randolph-Gordon testified $250 is a reasonable fee, and so what we're asking for is not unreasonable for the amount. But if you... You're not appealing that issue. Pardon? I'm sorry. Did you say time was up? You're not appealing that issue. That? That the trial court abuses discretion in granting $162. Oh, no. I'm just saying they should not have summarily rejected the other claim. Maybe there was nothing I did that was reasonable and necessary, but he first had a look at it to find out. And they have a right to hit their attorney's fees. He paid me my municipality. At the end, the board should pay that when it is found that they did not comply with FOIA. And that's the posture of the case. They did not comply with FOIA. The court heard the arguments. He went over the attorney's fees. He came to a decision. And he allowed that. And the only issue before the court is that... Were they actually... Were they... Did the court abuse his discretion in awarding attorney's fees at... Without trust in the rape? And should he have looked at the effort it took, which is the two days... Two afternoons of actual trial for the eyewitnesses, which is more than we did with the other one. The other one was more like... It was more paperwork and pleading and research. But the actual trial work, the two days of afternoon trial, was what we had to do because they opposed it. So where we are now is it was... Attorney's fees were allowable under FOIA. The court did not abuse his discretion in doing so. But he should have... Should have allowed the claim for attorney's fees for proving up attorney's fees. And that... If you have any questions, if not, I'll step down. I don't believe there are. Thank you, Mr. Chairman. Mr. Herman, you may reply. I'll be brief. The motions to dismiss that were filed all raised the grand jury statute as the issue why the motion should be dismissed because we were relying on the exemption of the grand jury statute. And as that relates to the statutory exemption in the Freedom of Information Act, I think that's B. The Duncan Pup case, I don't think is applicable here. That was a case where the government was not acting in good faith. And the government wrongly denied the Freedom of Information request. The lawsuit was filed. And said, well, we gave you this stuff so we're not paying. And the court rightfully said, no, you caused the lawsuit to be filed by denying the request. You're going to pay for the attorney's fees in recovering what they were seizing. The fee agreement, Mr. Kaplan... Well, let's, before we get into that, what about Mr. Kaplan's argument there already was an order out there that governed this request? The discovery rules are pre-trial. We're required under Supreme Court Rule 402D to give all this stuff to a defendant pre-trial so he can know what's going on and what the evidence is going to be against him in pre-trial. I don't believe Supreme Court Rule 402 is in effect 14 years after he's convicted. I don't think I can rely on that and say, well, there's a court order Supreme Court Rule 402 allows me to give it to you. I think it's a factor to be considered on the court's discretion in the interest of justice should the order be entered turning over the grand jury. So you're saying the order is only limited to that Supreme Court rule? What Mr. Kaplan is referring to, yes. In this case, Judge Doherty did enter an order. No, no, no, no. You already had an order. How many years ago? Well, the Supreme Court rule wasn't on the court. So, was there a physical order in the file or were these produced to the defendant pursuant to the Supreme Court rule? Pursuant to the discovery by Supreme Court Rule 402. So there was no request to the court imposing jurisdiction of that trial court on an order directing the transcript be provided to the defendant. I believe we were obligated to do that by application of the Supreme Court Rule 402. The courts are full of finding out that you were obligated to do that but it wasn't done. And the trial court was asked to make an order forcing people  under the rules to provide. We're asking, I think Justice Smith's asking, is there an order signed by a judge directing, no matter how many years ago, this transcript be provided to the defendant? A specific order? No, Your Honor. Was there a standing order? I think in the 14th Circuit there's a standing order, a local order, requiring that in criminal cases. And I think paralleling the Supreme Court rule where this is what's required for discovery in criminal cases. I'm not aware of any 13th Judicial Circuit order that requires that. I am aware that Supreme Court Rule 402 requires it to be provided and it was provided. So it's a standing order, I suppose. Not technically, but for our purposes. Yes. Okay. Yeah, I wouldn't tell you that we weren't obligated to do that, we certainly weren't. The fee agreement Mr. Kaplan talks about, if he had a free agreement, curiously he never introduced that. That would be the one arm's length transaction that would give Judge Doherty an opportunity to see what is reasonable in this case. He failed to produce that. And the cases cited say that's an important factor to consider. Mr. Kaplan's assertion that $250 an hour is fair and reasonable based on his experience, his experience is only one of the factors under JBS law. The other factors all weigh in favor of the county. Why attorney's fees should not have been awarded in this case. With regard to the cross appeal, there's no authority that I'm aware of that Mr. Kaplan has cited that would allow attorney's fees to be awarded for collecting attorney's fees. And I think the rule for that, or I think the reason for that is very simple. Mr. Kaplan could take this case to whatever lengths he could. The Illinois Supreme Court, the U.S. Supreme Court, he could have spent more hours in the trial court before Judge Doherty, essentially just incurring more legal fees for the county to pay in this case. I believe the court should not award any attorney's fees for his collecting of attorney's fees. I believe Judge Doherty was correct in that aspect. Let me ask you a question I asked earlier, and I'm sure you got the sidetracked there. Could you have been more proactive in this matter and reduce the fees substantially to maybe a couple of hours by simply saying I can't do this without a court order. Here's a draft. Sign it if you agree. We'll present it to the judge. I thought I was doing that in my answers in my motions to dismiss saying that I couldn't do it without complying with the grand jury statute.  give you a transcript with regard to communicating that directly to Taliani. He still is in prison. That couldn't be done. At least by the time Mr. Kaplan came in. The time Mr. Kaplan came in, I cited the grand jury statute to him in our first phone conversation. I told him in our first phone conversation I don't care if a judge enters an order. I'm giving it to him. If he does, I'll give it to you. I don't think I can give it to you absent that court order. I don't believe there are any further questions. Thank you. Thank you. Mr.    Had he done what Justice Libby suggested, we probably could have knocked out 50,000 people. We probably could have knocked out 50,000 people. The  that I did was defend against the motion. There was a lot of research. You can't see up and down that many cases, the cases I looked at and that's because there is no expert so to speak in FOIA. I had to get into it myself. I think we're limited in your argument now to the fees. I understood that your question to be within the context but I apologize if I'm  you. If we have to have a remand, it would also apply to the petition. I wish it to be remanded. I felt that he was specific not to the counter claim. When does it end? I think my petition I thought about that. I had a hearing on the petition for the time it took to get attorney fees. It never does end. I think my petition requested that what I know I have already done in this hearing coming up and we can fill in the blank at that time. Maybe somebody else should do the math but it would not go on forever. I contemplated that. Let's take a look at something he would have in front of me. If it was requested, then that would cause it to drag on. In my opinion, had he given the thing over earlier, the transcript over earlier when he could have, then it would have ended there without all those attorney fees. We had to go through that. I think  are          It is a very difficult case. It is a very difficult case, and it is a difficult case. It is a           very difficult case. The case is the criminal body cases. The charge is that you have rauiz . And it stops. But my point is this, we talk about going on forever, it was only almost at the virtual invitation of Judge Doherty to Mr. Herman. He said all I have here is the fee to  considered. I don't want to discourage him from that. To make sure he knows what the status might be. He asked to go forward with it. And the only reason it wouldn't stop if he used my method with prospective damages to be considered as we go along. And when I say damages, with prospective fees to be considered, then it would be liquidated, the end of the story. But the other side would have a right to ask for evidence you're hearing on that. It wouldn't be my idea. I didn't want to end it. I was getting rid of people that didn't belong to the case and cutting down issues and complaints. I have a history of trying to cut to the chase. And nobody asked for anything now. The other side didn't ask to continue. It will end. That was the point there. You did mention the good faith issue on Duncan. I want to make a comment. I can't come to the point now. If what I have not written is not an issue, so be it. Thank you for your attention. If you have any questions, ask me. I don't believe we do. Thank you. Thank you